IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re SOURCECORP SECURITIES LITIGATION | §<br>§ | Civil Action No. 3:04-CV-2351-N |

**ORDER**

Before the Court are Defendant Bill Deaton's Motion to Dismiss [28], Defendants Sourcecorp, Inc. ("SourceCorp"), Ed H. Bowman, Jr., Barry L. Edwards, and Image Entry, Inc.'s ("Image") Motion to Dismiss [30], Plaintiff George Reichl's Motion to Join the Consolidated Action as a Named Plaintiff [37], Lead Plaintiff's Motion to file a Second Amended Complaint [38]. The Court grants Reichl's motion to join and Lead Plaintiff's motion to file a second amended complaint. Because the Complaint does not allege facts raising a strong inference of scienter on the part of SourceCorp, Bowman, Edwards, or Image, the Court grants those Defendants' motion to dismiss. Because the Complaint has adequately pled facts to sustain the action against Deaton, the Court denies his motion. Finally, because original Lead Plaintiff David Templin fails to allege loss causation, the Court grants the motions to dismiss his individual claims.

**I. FACTUAL BACKGROUND**

SourceCorp, provides business document and information outsourcing for private industries and various government entities. SourceCorp began operating with seven companies in 1996. By December 31, 2003, SourceCorp had acquired sixty-five additional companies.

SourceCorp bought Image from Deaton in 2001. SourceCorp paid Deaton $32,812,500 cash, gave him $10,937,500 of stock, and allowed him to continue to run Image. Deaton could earn incentives up to $25 million by hitting certain earnings targets through early 2004. Deaton and Image reported earnings sufficient to trigger the incentives over the following three years. SourceCorp incorporated these reported earnings from Image into its public SEC filings for 2001, 2002, 2003, and the first half of 2004.

On October 27, 2004, SourceCorp warned investors not to rely on its consolidated financial statement for 2003 and the quarterly statements for the first half of 2004. SourceCorp attributed this bad news to an unnamed operating subsidiary's failure to follow GAAP in recognizing revenue from various contracts with customers. The Complaint alleges that it was Image that recorded revenue before delivering products to consumers, in excess of what its contracts permitted. The Complaint also alleges that Image shifted expenses to non-SourceCorp entities that Deaton controlled.

The day of this announcement, SourceCorp's stock price dropped from $22.21 to as low as $14.92 on trading that was forty-two times larger than the day before. On January 18, 2005, SourceCorp announced that the SEC had launched a formal investigation surrounding the circumstances of the earnings restatement. Three days later, SourceCorp announced that investors would be unable to rely on its reported results for 2001 and 2002.

Lead Plaintiff David Templin filed suit on November 1, 2004 alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) & 78t(a) (1997), SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), against all

defendants, and violations of the Exchange Act's section 20(a) against Defendants SourceCorp, Bowman, and Edwards. All Defendants timely moved to dismiss Lead Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), and for failure to plead scienter adequately pursuant to the Private Securities Litigation Reform Act, ("PSLRA"), 15 U.S.C. § 78u-4 (1995).

## II. THE COMPLAINT FAILS TO ALLEGE SCIENTER ADEQUATELY AGAINST SOURCECORP, EDWARDS, AND BOWMAN

### *A. The Exchange Act Requires Lead Plaintiff to Plead Facts Evincing a Strong Inference the Defendants Were Severely Reckless*

In order to survive the present motions to dismiss, Lead Plaintiff's Complaint must state a claim sufficient to survive scrutiny under Federal Rule of Civil Procedure 12(b)(6) and state the circumstances of fraud with particularity in compliance with Federal Rule of Civil Procedure 9(b) and the PSLRA. Additionally, it must comply with the further requirements of the PSLRA by alleging both the materiality of the misstatements and also the facts giving rise to a strong inference of scienter.

A court should not dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 (1957). This Courts must accept Lead Plaintiff's factual allegations as true. *Kaiser Aluminum & Cem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). However, to avoid dismissal, Lead Plaintiff "must come forward with specific supporting factual

allegations, not mere conclusory allegations or mischaracterizations of defendants' actual statements." *Alcina v. Pcorder.Com, Inc.*, 230 F. Supp. 2d 732, 736 (W.D. Tex. 2002).

Because Lead Plaintiff asserts fraud claims under Rule 10b-5, he must also satisfy heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the PSLRA to avoid dismissal. *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 349-50 (5th Cir. 2002). Rule 9(b) requires certain minimum allegations to be pled in securities fraud cases including the specific place, time, and content of the false representations as well as the identity of the individual making the false representations and what the person gained from making the representations. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). Additionally, the PSLRA requires complaints in security fraud cases to specify the who, what, when, where, and how of their alleged securities fraud. 15 U.S.C. §§ 78u-4(b)(1) (1995); *ABC Arbitrage,* 291 F.3d at 349-50. The Complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. §§ 78u-4(b)(2).

Case law clarifies that the least culpable state of mind actionable under Rule 10b-5 is severe recklessness. The Supreme Court has held that a plaintiff must allege and prove that the defendants acted with "scienter," i.e., "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193-94 n.12 (1976). In *Broad v. Rockwell*, 642 F.2d 929, 961-62 (5th Cir. 1981) (en banc), the Fifth Circuit determined that recklessness would not meet the scienter requirement, but that "severe recklessness" would. "Severe recklessness is limited to those highly unreasonable omissions

or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* The PSLRA did not alter the substantive requirements of scienter, but changed the procedure for pleading that element. *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 408-09 (5th Cir. 2001). Thus, to survive the present motion to dismiss, the Complaint must have pled facts raising a strong inference that Defendants were at least severely reckless.

### *B. Lead Plaintiff Fails to Plead that SourceCorp, Edwards, and Bowman Were Severely Reckless in their Actions*

In an effort to establish a strong inference of scienter, the Complaint attributes three categories of misstatements to the SourceCorp Defendants during the class period. First, the Complaint makes several allegations of misstatements related to the state of SourceCorp's internal controls. *See* Second Amended Consolidated Complaint ("Complaint") ¶ 3 (Bowman and Edwards "repeatedly signed, filed, and published certifications stating that SourceCorp's internal controls . . . were adequate when, in fact, neither . . . were at all adequate"); Complaint ¶¶ 17-19 (quoting and specifying the allegedly false Sarbanes-Oxley ("SOX") certifications that Bowman and Edwards made during the Class Period); Complaint ¶¶ 28-29 (same).

Defendants' mere certification, without more, is insufficient to establish a strong inference of scienter, for if otherwise the Court would be hard pressed to avoid finding scienter in any case that contained internal control allegations. *See, e.g., Morgan v. AXT,*

*Inc.*, 2005 WL 2347125, at *15 (N.D. Cal. Sept. 23, 2005) (dismissing securities fraud complaint based on plaintiff's failure to allege particularized facts showing the falsity of defendant's "averments [in Sarbanes-Oxley certifications] that he had examined the Company's internal disclosure controls and believed they were adequate"). Thus, Defendants mere certification of financial statements will not, by itself, show knowledge of falsity or recklessness.

Further, the allegations that Edwards, as CFO, and Bowman as CEO should have known certain facts or had to be immersed in SourceCorp's internal processes fail because "[a] pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002). Scienter of defendants at the parent level "cannot be presumed from a parent's reliance on its subsidiary's internal controls." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271 (2d Cir. 1996). Nor do "pervasive irregularities" in SourceCorp's accounting practices establish scienter, as the Fifth Circuit has held that merely pointing to the magnitude of an alleged fraud is not enough to establish scienter. *See, e.g.*, *Goldstein v. MCI Worldcom*, 340 F.3d 238, 251 (5th Cir. 2003) ("[b]are conclusory allegations that [the defendants] must have known about the accounts receivable problem simply because a large write-off was made . . . will not suffice under the PSLRA"). Thus, the Complaint does not demonstrate scienter through the allegations that Edwards and Bowman must have had knowledge of the falsity or were at least reckless with regard to SourceCorp's certifications.

Second, the Complaint makes several allegations of misstatements related to SourceCorp's revenue-recognition practices. *See* Complaint ¶¶ 34-36. For example, the Complaint alleges that on or about April 9, 2002, Bowman and Edwards signed statements declaring that SourceCorp recognized revenue "when the services [were] rendered or products [were] delivered to the customer." *See* Complaint ¶ 34. Although the Complaint alleges that these statements were incorrect, it is devoid of any specific allegation that Bowman knew when making the statement that it was wrong.

The Complaint does plead that Edwards was aware of the falsity of his statements, however its basis is merely that he allegedly told a confidential witness that he was aware that a SourceCorp subsidiary "did not have contracts to substantiate its revenue."[1] Even if this allegation is true, the discussed lack of contract documentation in early 2003 does not establish that Edwards was aware of the problem when he supposedly made the alleged misrepresentations from May 2001 through early 2003. Furthermore, Lead Plaintiff acknowledges that CW2's alleged conversation with Edwards occurred when SourceCorp was making changes to the Company's internal controls, suggesting that SourceCorp and

[1]The Complaint alleges:

> During the "first few days of 2003," Defendant Edwards told CW2 [Confidential Witness 2] that SOURCECORP was changing its revenue-recognition policy for work-in-progress receivables because some SOURCECORP subsidiaries did not have contracts to substantiate their revenues. CW2 told Edwards that the subsidiary where CW2 worked had such documentation, Edwards told CW2 that other SOURCECORP subsidiaries did not.

Complaint ¶ 23

Edwards had recognized an issue and acted to correct it, not that they were knowingly ignoring the issue and lying about its existence.

Finally, the Complaint makes several allegations of misstatements related to SourceCorp's consolidated financial results. *See* Complaint ¶¶ 43-69 (identifying false financial statements during the Class Period); Complaint ¶¶ 73-74, ¶ 80 (false certifications of Class Period financial statements). However, the Complaint did not provide any additional explanation of how these misstatements demonstrate a strong inference of scienter on the part of SourceCorp, Bowman, or Edwards.

Thus, considered individually, these facts do not give rise to a strong inference of scienter. However, this Court must consider scienter allegations collectively. *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 261 (5th Cir. 2005). That said, the Complaint did not plead facts collectively giving rise to a strong inference of scienter on the part of Bowman or Edwards. It follows of necessity that the Complaint also fails to plead facts giving rise to a strong inference of scienter on the part of SourceCorp. *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (scienter of the individual corporate official or officials who make or issue statement determines the corporate defendant's scienter). Accordingly, the Court grants the motion to dismiss the section 10(b) claims against SourceCorp, Edwards, and Bowman.

***C. Lead Plaintiff Has Failed to State a Claim Under Section 20(a) as to SourceCorp, Bowman, and Edwards***

Lead Plaintiff's control person claims against Bowman, Edwards, and SourceCorp fail as a matter of law because Lead Plaintiff has failed to sufficiently allege a violation of

section 10(b). *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 n.8 (5th Cir. 1996) (plaintiffs who failed to state a "predicate" section 10(b) claim necessarily failed to state a section 20(a) claim). Each section 20(a) defendant must have each induced or participated in a alleged predicate violation. Thus, Lead Plaintiff's claim against Deaton cannot constitute the required predicate claim for Bowman and Edwards, and SourceCorp as there is no allegation that these defendants induced or participated in Deaton's alleged violations. *See Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990). Accordingly, the Court grants the motion to dismiss the remaining section 20(a) claims against Edwards, Bowman and SourceCorp.

## III. LEAD PLAINTIFF FAILED TO ALLEGE WITH PARTICULARITY THAT IMAGE HAD SCIENTER

The Complaint relies on allegations regarding Deaton's motive and knowledge to establish Image's scienter. This reliance is misplaced because "the knowledge and actions of employees acting adversely to the corporate employer cannot be imputed to the corporation." *See Kaplan v. Utilicorp United, Inc.*, 9 F.3d 405, 407 (5th Cir. 1993). In determining whether to impute an executive's scienter to the company, this Court looks to whether an executive's fraud operates to benefit the company or whether the fraud is committed against the company. *See, e.g., FDIC v. Shrader & York,* 991 F.2d 216, 224-25 (5th Cir. 1993); *In re Cendant Corp. Sec. Litigation*, 109 F. Supp. 2d 225, 233 (D.N.J. 2000) (fraud imputed when officer's conduct was "for the benefit of the corporation."); *In re Kidder Peabody Securities Litig.*, 10 F. Supp. 2d 398, 415-417 & n.17 (S.D.N.Y. 1998) (finding evidence to support a reasonable inference of corporation's scienter where a securities

analyst had openly reported hundreds of millions of dollars in false profits, but not deciding imputation issue because of dispute as to whether trader was acting adversely to corporation's interests).

Image derived no benefit from Deaton's actions. It has no publicly-traded stock to inflate, nor any share in the unearned incentive payments Deaton received. Because the Complaint does not give particularized reasons as to how Image benefitted from Deaton's alleged fraud, the Court will not impute Deaton's scienter to Image. Accordingly, the Court grants the motion to dismiss as to Image.

## IV. The Court Denies Deaton's Motion to Dismiss

The Court denies Deaton's motion to dismiss because the Complaint adequately alleges facts evincing a strong inference of scienter on Deaton's part in making misstatements in connection with securities fraud for which he is primarily liable.

### *A. The Complaint Alleges Facts to Support a Strong Inference that Deaton Had Scienter*

The Complaint alleges facts that, when viewed collectively, support a strong inference of Deaton's scienter. As mentioned previously, the mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter. To show scienter the Complaint must allege either that Deaton knew that SourceCorp was publishing materially false information, or that he was severely reckless in providing such false information to SourceCorp for publication. The Complaint alleges that Deaton inflated Image's revenue, knowing that SourceCorp would incorporate those figures into its publicly-

stated financial results, in order to reach his incentive targets. This adequately alleges scienter.

### *B. Deaton Faces Liability as a Primary Violator Under the Exchange Act and Rule 10b-5*

Deaton contends that there is no private right of action for Lead Plaintiff to sue him under *Central Bank*. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) (superseded by statute on other grounds) (holding that there is no private right of action for "aiding and abetting" under section 10(b) and Rule 10b-5). *Central Bank* involved depreciating real estate used to secure a series of Colorado development bonds. Central Bank decided to withhold reviewing whether the underlying real estate was worth 160% of the bonds value, as required by the bond covenant, until after a second bond offering was released. Subsequently, Central Bank defaulted on the bonds. One of the bond holders, First Interstate, sued Central Bank under the Exchange Act's section 10(b) alleging Central Bank was secondarily liable for aiding and abetting other defendants' fraud. Responding to this argument, the Court held there was no private remedy for aiding and abetting a violation of the Exchange Act's section 10(b). The effective result of this case was that secondary actors accused of aiding and abetting a scheme to defraud investors were no longer subject to liability under rule 10b-5 for their participation in that fraud.

Deaton argues that because he did not directly participate in SourceCorp's preparing communications with the public, he is a secondary, as opposed to a primary actor and that thus there is no private right of action against him. However, Deaton is a primary actor because he employed the scheme to defraud investors. *See In re Homestore.com, Inc.*, 252

F. Supp. 2d 1018, 1040 (C.D. Cal. 2003). That a third party, SourceCorp, served as a conduit is of no matter: "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." RESTATEMENT (SECOND) OF TORTS § 533 (1977). The difference in this context between primary violators and secondary violators is that primary violators actually employ the scheme to defraud investors, while secondary violators merely participate in or facilitate that scheme. *In re Homestore, Inc.*, 252 F.Supp.2d at 1040. Viewing the Complaint in the light most favorable to Lead Plaintiff, it alleges that Deaton materially misstated Image's income with the intent to defraud SourceCorp's other shareholders. Under that allegation, Deaton was the employer, not a mere facilitator, of the scheme to defraud plaintiffs. Thus, Deaton was a primary actor.

In the alternative, even if Deaton were a secondary actor, primary liability attaches since he made a misstatement using another actor to deliver the message. *Central Bank* did not define what acts give rise to primary liability for secondary actors, although it did note that "[a]ny person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5" *Id*. at 191. Other courts interpreting Central Bank have held defendants similar to Deaton primarily

liable. *See In re Kidder Peabody*, 10 F. Supp. 2d 398, 407 (S.D.NY. 1998) (officer at subsidiary primarily liable for reporting inflated revenue incorporated into the parent's financial statements); *see also In re Alstom SA Secs. Litig.*, No. 03 Civ. 6595, 2005 U.S. Dist. LEXIS 35641, at *64-70 (S.D.N.Y. December 22, 2005) (same holding).

Accordingly, Lead Plaintiff has a private right of action against Deaton as he is primarily liable regardless of whether he was a secondary or primary actor.

### *C. The In-Connection Requirement*

Lead Plaintiff must also allege that Deaton's alleged statements and actions were "in connection with" the purchase or sale of securities. 15 U.S.C. § 78j(b). The in connection requirement is to be "construed 'not technically and restrictively, but flexibly to effectuate [the act's] remedial purposes.'" *SEC v. Zandford*, 535 U.S. 813, 819-20 (2002) (quoting *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151 (1972)). However, the alleged deceptive act must still at least "coincide" with a securities transaction. *Id.* at 822, 825. Here Deaton's misrepresentations coincided with putative class members' stock purchases. "[A] fraud or deceit can be practiced on one person, with resultant harm to another." *United States v. O'Hagan*, 521 U.S. 642, 656 (1997). Because the Complaint alleges that Deaton misstated Image's earnings knowing that this information would be passed on to purchasers of stock, the deception coincided with a multitude of securities transactions. Thus, the in-connection requirement is satisfied.

Accordingly, the Court denies Deaton's motion to dismiss.

## V. REMAINING MOTIONS

The Court grants Lead Plaintiff Templin's motion to amend. The Court also grants Reichl's motion to join as a named plaintiff.

Finally, the Court dismisses Lead Plaintiff Templin's individual claims for failure to show loss causation. A securities fraud plaintiff bears the burden to both plead and prove that "the act or omission of the defendant alleged to violate [the securities laws] caused the [plaintiff's] loss." 15 U.S.C. § 78u-4(b)(4). In *Dura Pharmaceuticals*, the Supreme Court confirmed that to establish loss causation, it is not sufficient to show that the stock price was inflated on the date of purchase. *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1631 (2005) ("an inflated purchase price will not itself constitute or proximately cause the relevant economic loss"). Instead, securities fraud liability exists only "for the loss the purchaser sustains when the facts . . . become generally known and as a result share value depreciates." *Id*. at 1633 (internal quotation marks omitted).

In the present case, Templin maintains that the fraudulent conduct was revealed to the market on October 27, 2004, more than 12 weeks after he had sold all of his stock. Although Templin argues that market forces may have dissipated the purported artificial inflation in the Company's stock price before the Company's corrective disclosure, this argument fails for two reasons. First, Templin's argument is legally unsound after *Dura*. Under the Fifth Circuit's interpretation of *Dura*, "there is no loss attributable to a misrepresentation unless and until the truth is subsequently revealed and the price of the stock accordingly declines." *United States v. Olis*, 429 F.3d 540, 546 (5th Cir. 2005). Second, Templin has pled no facts

to suggest that he may have suffered a loss at any time before the October 27, 2004 disclosure. Therefore, Templin does not have a claim.

A plaintiff without a claim "does not have standing to bring suit on behalf of a putative class." *Stanley v. Wal-Mart Stores*, 839 F. Supp. 430, 435 (N.D. Tex. 1993) (citing *Griffin v. Dugger*, 823 F.2d 1476, 1480 (11th Cir. 1987); *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 499 (7th Cir. 1972); *Dallas Gay Alliance, Inc. v. Dallas County Hospital Dist.*, 719 F. Supp. 1380, 1385 (N.D. Tex. 1989)). Thus, the Court dismisses Templin's claims. However, the Putative Class and Named Plaintiff Reichl's claims remain.

Signed June 5, 2006.

David C. Godbey
United States District Judge